## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "Agreement") is dated as of the ____ day of October, 2019 (the "Effective Date"), by and among **REGIONS BANK,** an Alabama banking corporation ("Lender"), **PRO SOUTH, INC.,** a Mississippi corporation ("Pro South"), **PRO LOGGING, INC.,** a Mississippi corporation ("Pro Logging"), **PRO TRUCKING, INC.,** a Mississippi corporation ("Pro Trucking" together with Pro South and Pro Logging, collectively, the "Borrowers"), **RUSSELL MARION STITES,** an individual ("RMS"), **AMY GLISSEN STITES,** an individual ("AGS" together with RMS, collectively, the "Guarantors" and individually a "Guarantor"; the Guarantors together with the Borrowers are hereinafter collectively referred to as the "Obligors" and each singularly, an "Obligor"). The Obligors together with Lender, each singularly a "Party" and collectively, the "Parties").

## RECITALS

**WHEREAS**, Pro South is indebted to Lender for a term loan in the stated principal amount of $242,992.75 ("Loan 1"), which Loan 1 is presently evidenced and secured by (i) that certain Promissory Note dated July 23, 2015 from Pro South in favor of Lender (as previously or hereafter amended, "Note 1"); (ii) that certain Commercial Security Agreement dated July 23, 2015 from Pro South in favor of Lender (the "Loan 1 Security Agreement"); and (iii) that certain Commercial Guaranty dated July 23, 2015 from RMS in favor of Lender (the "Loan 1 Guaranty");

**WHEREAS**, Pro South is also indebted to Lender for a term loan in the stated principal amount of $149,951.75 ("Loan 2"), which Loan 2 is presently evidenced and secured by (i) that certain Promissory Note dated March 18, 2016 from Pro South in favor of Lender (as previously or hereafter amended, "Note 2"); (ii) that certain Commercial Security Agreement dated March 18, 2016 from Pro South in favor of Lender (the "Loan 2 Security Agreement"); and (iii) that certain Commercial Guaranty dated March 18, 2016 from RMS in favor of Lender (the "Loan 2 Guaranty");

**WHEREAS**, Pro South is also indebted to Lender for a term loan in the stated principal amount of $194,297.40 ("Loan 3"), which Loan 3 is presently evidenced and secured by (i) that certain Promissory Note dated December 9, 2016 from Pro South in favor of Lender (as previously or hereafter amended, "Note 3"); (ii) that certain Agricultural Security Agreement dated December 9, 2016 from Pro South in favor of Lender (the "Loan 3 Security Agreement"); and (iii) that certain Commercial Guaranty dated December 9, 2016 from RMS in favor of Lender (the "Loan 3 Guaranty");

**WHEREAS**, Pro South is also indebted to Lender for a term loan in the stated principal amount of $418,292.25 ("Loan 4"), which Loan 4 is presently evidenced and secured by (i) that certain Promissory Note dated August 29, 2017 from Pro South in favor of Lender (as previously or hereafter amended, "Note 4"); (ii) that certain Commercial Security Agreement dated August 29, 2017 from Pro South in favor of Lender (the "Loan 4 Security Agreement"); and (iii) that certain Commercial Guaranty dated August 29, 2017 from RMS in favor of Lender (the "Loan 4 Guaranty");

1

**EXHIBIT "A"**

**WHEREAS,** Borrowers are indebted to Lender for an working capital line of credit loan in the stated principal amount of up to $1,520,300 ("Loan 5"), which Loan 5 is presently evidenced and secured by (i) that certain Note dated November 3, 2016 from Borrowers in favor of Lender (as previously or hereafter amended, "Note 5"); (ii) that certain Loan Agreement dated November 3, 2016 by and between Borrowers and Lender (the "Loan 5 Loan Agreement"); (iii) that certain Credit Agreement dated November 3, 2016 by and among Borrowers and Lender (the "Loan 5 Credit Agreement"); (iv) that certain Security Agreement – SBA dated November 3, 2016 from Borrowers and RMS in favor of Lender (the "Loan 5 Security Agreement 1"); (v) that certain Security Agreement dated November 3, 2016 from Borrowers in favor of Lender (the "Loan 5 Security Agreement 2"); (vi) that certain Unconditional Guaranty dated November 3, 2016 from RMS in favor of Lender (the "RMS Loan 5 Guaranty"); (vii) that certain Unconditional Limited Guarantee dated November 3, 2016 from AGS in favor of Lender (the "AGS Loan 5 Guaranty"); and (viii) that certain Deed of Trust from Obligors for the benefit of Lender, as recorded November 7, 2016 as Instrument No. 2016004530 with the Prentiss County, Mississippi Chancery Court (the "Loan 5 Deed of Trust");

**WHEREAS,** Borrowers are indebted to Lender for a term loan in the stated principal amount of $3,202,000 ("Loan 6", together with Loan 1, Loan 2, Loan 3, Loan 4 and Loan 5, collectively, the "Loans"), which Loan 6 is presently evidenced and secured by (i) that certain Note dated November 3, 2016 from Borrowers in favor of Lender (as previously or hereafter amended, "Note 6"); (ii) that certain Loan Agreement dated November 3, 2016 by and between Borrowers and Lender (the "Loan 6 Loan Agreement"); (iii) that certain Credit Agreement dated November 3, 2016 by and among Borrowers and Lender (the "Loan 6 Credit Agreement"); (iv) that certain Security Agreement – SBA dated November 3, 2016 from Borrowers and RMS in favor of Lender (the "Loan 6 Security Agreement 1"); (v) that certain Security Agreement dated November 3, 2016 from Borrowers in favor of Lender (the "Loan 6 Security Agreement 2"); (vi) that certain Unconditional Guaranty dated November 3, 2016 from RMS in favor of Lender (the "RMS Loan 6 Guaranty"); (vii) that certain Unconditional Limited Guarantee dated November 3, 2016 from AGS in favor of Lender (the "AGS Loan 6 Guaranty"); and (viii) that certain Deed of Trust from Obligors for the benefit of Lender, as recorded November 7, 2016 as Instrument No. 2016004529 with the Prentiss County, Mississippi Chancery Court (the "Loan 6 Deed of Trust");

**WHEREAS,** Obligors agree that, as of October 31, 2019, the outstanding balances owed to Lender under the Loans, exclusive of attorneys' fees, is accurately set forth on Exhibit A attached hereto, which Exhibit A is incorporated into this Agreement and made a part hereof;

**WHEREAS,** Pro South filed a petition for bankruptcy protection under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, Case No. 19-42427-btr (the "Bankruptcy Case"); and

**WHEREAS,** following the filing of the Bankruptcy Case, the Obligors and Lender have agreed to resolve all disputes between them on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, for and in consideration of the foregoing Recitals, the covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the Parties, Obligors agree with Lender, and represent and warrant to Lender, and Lender agrees with Obligors, as follows:

42234842 v3

1.    Defined Terms.  The following terms shall have the following meanings and include the plural as well as the singular and vice versa:

(a)    "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

(b)    "Collateral" means the Personal Property, Real Property and all other real and personal property granted or pledged as security for the Loans.

(c)    "Deeds of Trust" means collectively, the Loan 5 Deed of Trust and Loan 6 Deed of Trust.

(d)    "Event of Default" has the meaning set forth in Section 5 of this Agreement.

(e)    "Lender Parties" has the meaning set forth in Section 9 of this Agreement.

(f)    "Loan Documents" means, collectively, any and all documents or instruments of any kind heretofore executed or delivered in connection with, or evidencing, securing, guaranteeing or relating to, the Loans, including, without limitation, the documents described in the Recitals of this Agreement, together with any and all extensions, revisions, modifications or amendments at any time made to any of the foregoing.

(g)    "Obligations" means the obligations to pay the indebtedness and to perform the other obligations contained in the Loan Documents according to the terms thereof.

(h)    "Personal Property" means all personal property pledged by Obligors or otherwise as collateral for the Loans pursuant to the Loan Documents.

(i)    "Real Property" means the real property and all improvements thereon encumbered by the lien of the Deeds of Trust.

(j)    "Settlement Documents" means this Agreement and any and all other documents or instruments of any kind, if any, heretofore, contemporaneously herewith or hereafter executed or delivered in connection with, or evidencing, securing, guaranteeing or relating to, the settlement of the Obligations, together with any and all extensions, revisions, modifications or amendments at any time made to any of the foregoing.

(k)    "Total Settlement Amount" has the meaning set forth in Section 3 of this Agreement.

2.    Confirmation of Facts.  Obligors hereby acknowledge and agree that (a) the Recitals to this Agreement are true, accurate and complete in all material respects.

3.    General Settlement Terms.  Obligors agree to the following settlement terms:

(a)    Payments.

(i)     On or before the Effective Date, Obligors shall pay to Lender the sum of $20,000 (the "Initial Adequate Protection Payment").

(ii)    On or before each of November 30, 2019, December 31, 2019, and January 25, 2019, Obligors shall pay to Lender a monthly payment in the amount of $22,500 (collectively, the "Additional Adequate Protection Payments" together with the Initial Adequate Protection Payment, collectively, the "Adequate Protection Payments"). Provided no Event of Default has occurred, one-half of each Adequate Protection Payment shall be credited toward the Total Settlement Amount, with the remainder being applied by Lender to the Obligations in such manner and order as determined by Lender in its sole discretion.

(iii)   On or before January 31, 2020 (the "Initial Settlement Payment Date"), Obligors shall pay, or cause to be paid, to Lender the sum of $4,350,000 (the "Total Settlement Amount"; for clarification, the Total Settlement is subject to credits for Adequate Protection Payments and Extension Fees paid, if applicable, as more particularly described herein). Obligors shall have the right to extend the Initial Settlement Payment Date to March 1, 2020 (the "First Extended Settlement Payment Date") provided no Event of Default has occurred and Obligors pay to Lender, on or before the Initial Settlement Payment Date, the sum of $50,000 (the "First Extension Fee"). Obligors shall have the right to extend the First Extended Settlement Payment Date to March 31, 2020 (the "Second Extended Settlement Payment Date") provided no Event of Default has occurred and Obligors pay to Lender, on or before the First Extended Settlement Payment Date, the sum of $50,000 (the "Second Extension Fee" together with the First Extension Fee, collectively, the "Extension Fees"). Provided no Event of Default has occurred, one-half of any Extension Fees received by Lender shall be credited toward the Total Settlement Amount, with the remainder being applied by Lender to the Obligations in such manner and order as determined by Lender in its sole discretion. In the event that the Obligors elect to extent the Initial Settlement Payment Date to the First Extended Settlement Payment Date, in addition to the First Extension Fee, on or before February 28, 2020, Obligors shall pay to Lender an additional Adequate Protection Payment in the amount of $22,500, with such additional Adequate Protection Payment being applied to the Obligations in accordance with Section 3(a)(ii) hereof. In the event that the Obligors elect to extend the First Extended Settlement Payment Date to the Second Extended Settlement Payment Date, in addition to the Second Extension Fee, on or before March 30, 2020, Obligors shall pay to Lender an additional Adequate Protection Payment in the amount of $22,500, with such additional Adequate Protection Payment being applied to the Obligations in accordance with Section 3(a)(ii) hereof.

(b)     Relief from Stay. Pro South shall and does hereby stipulate and agree, subject to approval of the Bankruptcy Court as provided herein, to the immediate termination of the automatic stay arising under 11 U.S.C § 362 in the Bankruptcy Case, so as to permit the Lender to pursue any and all of its rights and remedies under the Loan Documents and applicable law with respect to the Loans and the Collateral (including without limitation any actions taken or that may be taken against any Obligors, or property of Obligors, other than Pro South, to collect a debt owed by Pro South). All Obligors other than Pro South also covenant and agree that if any such Obligors file any petitions for relief under the Bankruptcy Code, or are the subject of any involuntary

bankruptcy filings, such Obligors shall stipulate and take such actions as necessary to permit the Lender to obtain immediate relief from the automatic stay to pursue any and all of its rights and remedies under the Loan Documents and applicable law with respect to the Loans and the Collateral in such other bankruptcy cases. Notwithstanding the foregoing, Lender acknowledges and agrees that it will not exercise any of its rights and remedies against the Obligors or any of the Collateral unless and until an Event of Default has occurred.

(c)     Payment of Taxes. On or before November 15, 2019, Obligors shall pay, or cause to be paid, the 2019 ad valorem taxes on all the Real Property and shall provide evidence of the payment thereof to Lender.

(d)     Proof of Insurance. Within ten (10) days of the Effective Date, Obligors shall provide to Lender, documentation and such other evidence satisfactory to Lender, in its sole discretion that Obligors have placed insurance on the Collateral with coverages and limits as required by the Loan Documents, and such insurance shall be maintained by Obligors until such time as all Obligations have been satisfied in full in accordance with the terms and conditions of this Agreement.

(e)     Maintenance of Collateral. Until such time as the Obligations have been satisfied in full in accordance with the terms and conditions of this Agreement, Obligors shall (i) cause the Real Property to be serviced by all available utilities (e.g. water, sewer, electric, gas, etc.) and shall pay all bills for such utilities prior to delinquency and shall provide evidence of payment of such utilities to Lender within three (3) days of the payment thereof, and (ii) maintain the Collateral in accordance with the terms and conditions of the Loan Documents.

(f)     Execution of this Agreement. Until such time as fully executed by Obligors, the terms and provisions of this Agreement shall constitute an offer by Lender for settlement of the Obligations (the "Settlement Offer"). If this Agreement has not been executed by Obligors within the earlier of (i) three (3) days after the Parties agree to the final form thereof, or (ii) 5:00 pm central time on October 31, 2019, the Settlement Offer shall be immediately rescinded and no longer available for acceptance by Obligors, and Lender shall have the immediate right to pursue all its rights and remedies against Obligors pursuant to the Loan Documents or otherwise available at law or equity.

(g)     Approval by the Court. Pro South shall file within seven (7) days after the execution of this Agreement by all Parties a motion seeking entry of an order of the Bankruptcy Court for approval of this Agreement, including the stay relief and the releases contemplated herein, under Rules 9019 and 4001(d) of the Federal Rules of Bankruptcy Procedure, and shall seek approval of the motion by the Bankruptcy Court without undue delay following appropriate notice and opportunity for hearing. Said motion shall incorporate the settlement terms outlined herein and include as an attachment a copy of the fully executed Agreement. The motion and proposed order filed and submitted to the Bankruptcy Court in connection herewith shall be in form and substance acceptable to the Lender.

(h)     United States Dollars; Immediately Available Funds.     Payments due hereunder shall be payable on the date due via wire transfer, in accordance with wire instructions to be provided by Lender, in lawful money of the United States of America.

(i)  Joint and Several Obligation.  The Total Settlement Amount and the Obligations are the joint and several obligation of each Obligor.

4.  Conditions Precedent to the Effectiveness of this Agreement.  The effectiveness of this Agreement and the rights, duties and obligations of the parties under this Agreement are conditioned upon approval by the Bankruptcy Court of this Agreement.

5.  Events of Default.  Any of the following shall constitute a default under this Agreement (each a "Default"): (a) failure by any Obligor under this Agreement to observe or perform any term, condition, covenant, or agreement set forth herein; or (b) any Obligor (other than Pro South) files or has a petition filed against it under any federal or state law relating to bankruptcy, insolvency or other relief for debtors.  Upon the occurrence of a Default, if such Default is not cured within five (5) days of notice thereof from Lender to Obligors, such Default shall be an "Event of Default."  Upon any Event of Default, Lender shall have no further obligations under this Agreement, and Lender shall have the immediate right to exercise and pursue all available rights and remedies against Obligors, whether pursuant to the Loan Documents, this Agreement, or otherwise available at law or equity, including, without limitation foreclosure and repossession of the Collateral.  Obligors acknowledge and agree that upon any Event of Default, any Adequate Protection Payment or Extension Fee received prior to such Event of Default shall not be credited to the Total Settlement Amount and shall be applied by Lender to the Obligations in such order and manner as determined by Lender in its sole discretion.

6.  Attorneys' Fees and Other Expenses of Lender.  In the event any Obligor breaches this Agreement or upon an Event of Default under this Agreement, Lender shall be entitled to recover its reasonable attorneys' fees, expenses and costs actually incurred as a result thereof, in addition to any other relief to which it may be entitled.

7.  Waiver of Notice.  To the maximum extent permitted by applicable law, Obligors waive all rights to notice that they might have been entitled to receive in the past or may be entitled to receive at any time in the future, except those required herein.

8.  Release of Lender Parties.  In consideration of Lender entering into this Agreement, and without any contingency, precondition, or condition subsequent, each Obligor, as of the Effective Date, for himself/herself/itself and its/his/her heirs, executors, trustees, successors and assigns, does hereby fully and forever release, relinquish, discharge, settle and compromise any and all claims, cross-claims, counterclaims, causes, damages and actions of every kind and character, and all suits, costs, damages, expenses, compensation and liabilities of every kind, character and description, whether direct or indirect, known or unknown, disclosed or hidden, in law or in equity, which any of them had or will have against Lender and/or any Lender Parties on account of, arising, or resulting from, or in any manner incidental to, any and every thing or event occurring or failing to occur at any time in the past up to and including the date hereof, including, without limitation, any claims relating to the Loan Documents, the Settlement Documents, any act or event relating to Lender's administration of the Loans, this Agreement or any other transaction contemplated by this Agreement (each a "Claim").  Each Obligor hereby expressly agrees that this release is to be construed in its broadest possible sense to release, without limitation, Lender, Lender Parties, Burr & Forman LLP, and their attorneys and employees (in addition to all other

42234842 v3

6

categories and groups of persons set forth herein), from any and all Claims that arose or accrued from the beginning of time through the date of this Agreement.

9.     Release of Obligors. Upon receipt of this Agreement fully executed by Obligors and satisfaction of all other terms and conditions of this Agreement in strict accordance herewith, including, without limitation, timely payment of the Adequate Protection Payments and the Total Settlement Amount, Lender, on its own behalf and on behalf of its present and former shareholders, creditors, directors, officers, employees, agents, representatives, advisors, consultants, professionals, and affiliates, together with its predecessors, successors, and assigns (collectively, "Lender Parties"), hereby releases and discharges Obligors from any and all claims, complaints, causes of action, choses in action, demands, liabilities, losses, damages, and obligations, whether known or unknown, whether now existing or hereafter arising, with respect to or arising in connection with the Loans and Loan Documents; provided, however, that notwithstanding the foregoing, such release and discharge does not apply to (i) any and all Claims arising under or in connection with this Agreement and the transactions contemplated hereby, including without limitation, any and all obligations and liabilities with respect to the Total Settlement Amount, and (ii) any other obligations of any Obligor which are not evidenced by this Agreement, the Loan Documents or any other Settlement Documents, whether such are evidenced by promissory note, guaranty, deposit account agreement or otherwise.

10.     No Set-offs. Obligors hereby acknowledge that there are no set-offs, claims, counterclaims or defenses available to Obligors with respect to the Loans, the Loan Documents, this Agreement or any other Settlement Documents, and to the extent any such set-offs, claims, counterclaims or defenses exist, the same are hereby waived and released in consideration of Lender entering into this Agreement.

11.     Authority. Obligors represent and warrant to Lender that: (a) they have the power and authority to execute, deliver and perform this Agreement and the other Settlement Documents and the same have been duly executed and delivered by Obligors; (b) this Agreement and the other Settlement Documents constitute valid and legally binding obligations of Obligors, enforceable in accordance with the respective terms stated therein; (c) the execution, delivery and performance by Obligors of this Agreement and the other Settlement Documents, will not and did not, violate, conflict with, or constitute any default under any law (including laws relating to usury), government regulation, or any other agreement or instrument binding upon Obligors; and (d) no approval, authorization or other action by, or filing with, any governmental official, board or authority is required in connection with the execution and delivery of this Agreement or any of the other Settlement Documents, and the performance of the provisions thereof, except such approvals and authorizations as have been received, such actions as have been taken, and such filings as have been made. Obligors shall provide evidence of the foregoing reasonably satisfactory to Lender.

12.     Construction. Each Party acknowledges that it has participated in the negotiation of this Agreement and no provision of this Agreement shall be construed against or interpreted to the disadvantage of any Party hereto by any court or other governmental or judicial authority by reason of such Party having or being deemed to have structured, dictated or drafted such provision. All terms of this Agreement were negotiated at arms-length, and this Agreement was prepared and executed without fraud, duress, undue influence or coercion of any kind exerted by any of the

42234842 v3

7

Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13.     Severability. If, from any circumstances whatsoever, fulfillment of any provision of this Agreement shall involve transcending the limit of validity presently prescribed by any applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity. Further, if any clause or provision herein contained operates or would prospectively operate to invalidate this Agreement, in whole or in part, then such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this Agreement shall remain operative and in full force and effect.

14.     No Third Parties Benefited. This Agreement is made and entered into for the protection and benefit of the Parties hereto and their successors, heirs and assigns, and no other person or entity shall be a direct or indirect beneficiary or have any direct or indirect cause of action or claim in connection with this Agreement or any other Settlement Documents.

15.     Voidable Transfers. Notwithstanding any other terms hereof (or any release given pursuant hereto), if the incurrence, payment or performance of any obligations under this Agreement or any other Settlement Documents by the Obligors, or the transfer to the Lender of any property hereunder should for any reason subsequently be declared to be void or voidable under any state or federal law relating to creditors' rights, including provisions relating to fraudulent conveyances, preferences, or other voidable or recoverable payments of money or transfers of property (collectively, a "Voidable Transfer"), and if the Lender is required to repay or restore, in whole or in part, any such Voidable Transfer, or elects to do so upon advice of its counsel, then, such Voidable Transfer shall constitute an Event of Default and the entire amount of the outstanding Obligations shall be revived, reinstated and restored with respect to the Obligors and shall be immediately due and payable. The provisions of this paragraph shall survive and remain in full force and effect notwithstanding the termination of this Agreement.

16.     Counterparts; Electronic Delivery. To facilitate execution, this Agreement and any required consents may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature of, or on behalf of, any Party, or that the signature of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Agreement or any required consent to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the Parties thereto. Any signature to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages. Delivery of an executed counterpart of this Agreement or any required consent by telefacsimile or any other form of electronic transmission shall be equally as effective as delivery of an original executed counterpart thereof. Any Party delivering an executed counterpart of this Agreement or any required consent by telefacsimile or other electronic means also shall deliver an original executed counterpart of such instrument, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect thereof.

17.     Credit and Tax Reporting. Each Obligor acknowledges and agrees that Lender will, in accordance with applicable law and the standard internal policies of Lender, report the

transactions made in accordance with this Agreement to the Internal Revenue Service, any state and local taxing authorities or agencies, credit reporting and similar agencies, or other persons as required by law. Each Obligor further acknowledges that Lender has not made any representations, or offered any advice or opinion, concerning the tax consequences of the Parties' settlement pursuant to this Agreement.

18.     Governing Law. Notwithstanding anything to the contrary contained in any other Settlement Documents and except as prohibited by applicable law, (this Agreement and the other Settlement Documents shall be construed and enforced in accordance with the laws of the State of Alabama, without regard to the conflict of laws rules in effect from time to time in the State of Alabama.

19.     **Consent of Jurisdiction and Waiver of Jury Trial. OBLIGORS HEREBY MUTUALLY WAIVE ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS AGREEMENT OR ANY OTHER SETTLEMENT DOCUMENTS, OR IN ANY WAY CONNECTED WITH OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS AGREEMENT OR ANY OTHER SETTLEMENT DOCUMENTS, OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES HEREUNDER AND THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. OBLIGORS AND LENDER AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT BETWEEN THE PARTIES IRREVOCABLY TO WAIVE TRIAL BY JURY. OBLIGORS IRREVOCABLY SUBMIT TO THE JURISDICTION OF THE UNITED STATES DISTRICT COURTS FOR THE NORTHERN DISTRICT OF THE STATE OF ALABAMA AND THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, OVER ANY SUIT, ACTION, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE SETTLEMENT DOCUMENTS AND ANY SUCH SUIT, ACTION, OR PROCEEDING SHALL BE TRIED IN A COURT IN SUCH JURISDICTION BY A JUDGE SITTING WITHOUT A JURY. OBLIGORS HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF LENDER, INCLUDING LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF SUCH DISPUTE OR CONTROVERSY, SEEK TO ENFORCE THE PROVISIONS OF THIS PARAGRAPH, AND OBLIGORS ACKNOWLEDGE THAT LENDER HAS, IN PART, BEEN INDUCED TO ENTER INTO THIS AGREEMENT IN RELIANCE ON THE PROVISIONS OF THIS PARAGRAPH.**

20.     Miscellaneous. It is further agreed as follows:

(a)     Time is of the essence of this Agreement and each provision of this Agreement.

(b)     This Agreement constitutes the entire and final agreement among the Parties and there are no agreements, understandings, warranties or representations among the Parties except as set forth herein.

(c)     This Agreement will inure to the benefit of and bind the respective heirs, personal representatives, successors, and permitted assigns of the Parties hereto.

(d)     The relationship between Obligors and Lender is that of debtor and creditor. Nothing contained in this Agreement will be deemed to create a partnership or joint venture between Lender and Obligors or any other party, or to cause Lender to be liable or responsible in any way for the actions, liabilities, debts, or obligations of Obligors or any other party.

(e)     Paragraph or other headings contained in this Agreement are for reference purposes only and are not intended to affect in any way the meaning or interpretation of this Agreement.

(f)     Neither this Agreement nor any of the provisions hereof can be changed, waived, discharged or terminated, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

21.     Date of Agreement. The "Effective Date" of this Agreement is intended as a date for the convenient identification of this Agreement and is not intended to indicate that this Agreement was executed and delivered on that date.

**[Signatures begin on next page]**

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement under their respective seals with the intention that this Agreement will be effective as of the Effective Date.

<u>**OBLIGORS**</u>:

**PRO SOUTH, INC.,**
a Mississippi corporation

BY: _____

Rod Kagy, Its CEO

STATE OF ___Tx___ )

COUNTY OF ___Denton___ )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Rod Kagy, whose name as Chief Executive Officer of Pro South, Inc., a Mississippi corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he, as such Chief Executive Officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and seal, this ___31___ day of ___October___, 2019.

_____
NOTARY PUBLIC

[NOTARIAL SEAL]                    My Commission Expires: ___4-24-22___

JOHN NORMAN PITTS
Notary ID #129796997
My Commission Expires
April 24, 2022

**PRO LOGGING, INC.,**
a Mississippi corporation

BY: _____

Russell M. Stites, Its CEO

STATE OF _Mississippi_ )

COUNTY OF _Prentiss_ )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Russell M. Stites, whose name as Chief Executive Officer of Pro Logging, Inc., a Mississippi corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he, as such Chief Executive Officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and seal, this _31_ day of _October_, 2019.

[NOTARIAL SEAL]

_____
NOTARY PUBLIC
My Commission Expires: _09/29/2021_

**PRO TRUCKING, INC.,**
a Mississippi corporation

BY: _____

Russell M. Stites, Its CEO

STATE OF _Mississippi_ )

COUNTY OF _Prentiss_ )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Russell M. Stites, whose name as Chief Executive Officer of Pro Logging, Inc., a Mississippi corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he, as such Chief Executive Officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and seal, this _31_ day of _October_, 2019.

_____
NOTARY PUBLIC
My Commission Expires:   _09/29/2021_

**RUSSELL MARION STITES,** an individual

STATE OF _Mississippi_ )
                                    )
COUNTY OF _Prentiss_ )

I, the undersigned Notary Public in and for said County, in said State, hereby certify that Russell Marion Stites, an individual, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal, this _31_ day of _October_ , 2019.

[NOTARY SEAL]

Notary Public
My Commission Expires: _09/29/2021_

**AMY GLISSEN STITES**, an individual

STATE OF _Mississippi_    )
                          )
COUNTY OF _Prentiss_      )

    I, the undersigned Notary Public in and for said County, in said State, hereby certify that Amy Glissen Stites, an individual, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal, this _3/_ day of _October_ , 2019.

[NOTARY SEAL]

Notary Public
My Commission Expires: _09/29/2021_

**LENDER:**

**REGIONS BANK**
an Alabama banking corporation

BY: _Rob't L. Smith_

Print Name: _ROBERT L. SMITH, JR._

Its: _VICE PRESIDENT_

**STATE OF** _Alabama_ )
**COUNTY OF** _Montgomery_ )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that _ROBERT L. SMITH, JR._ , whose name as _VICE PRESIDENT_ of Regions Bank, an Alabama banking corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of said conveyance, s/he, as such officer, and with full authority, executed the same voluntarily for and as the act of said banking corporation.

Given under my hand and seal of office this _31_ day of _October_ , 2019.

_Sherese Felder_
Notary Public
[NOTARIAL SEAL]
My commission expires: MY COMMISSION EXPIRES DECEMBER 18, 2022

## EXHIBIT A

### Outstanding Loan Amounts as of October 31, 2019

1. Loan 1: $277,690.12 (consisting of $242,992.75 in principal, $32,914.72 in interest and $1,782.65 in late fees).

2. Loan 2: $169,143.91 (consisting of $149,951.75 in principal and $19,192.16 in interest).

3. Loan 3: $225,358.81 (consisting of $194,297.40 in principal and $31,061.41 in interest).

4. Loan 4: $486,906.12 (consisting of $418,292.25 in principal and $68,613.87 in interest).

5. Loan 5: $1,684,184.74 (consisting of $1,504,817.87 in principal, $168,660.57 in interest and $10,706.30 in late fees).

6. Loan 6: $3,414,082.02 (consisting of $3,097,857.73 in principal and $268,456.00 in interest and $53,018.29 in late fees and other charges).